**Daniel Eugene BASS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. B14–90–00905–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

Motion for Rehearing Overruled
and Opinion of March 12,
1992 Withdrawn.

Affirmed and Opinion on Rehearing
filed May 7, 1992.

Rehearing Denied June 4, 1992.

144

Richard G. Baker, Liberty, for appellant.

Michael S. McNeely, Anahuac, for appellee.

Before PAUL PRESSLER, MURPHY and CANNON, JJ.

## OPINION ON REHEARING

CANNON, Justice.

Appellant entered a plea of not guilty before a jury to the offenses of possession of a controlled substance, namely marihuana, and failure to pay the controlled substances tax. TEX. HEALTH & SAFETY CODE ANN. § 481.121(b)(3); TEX. TAX CODE ANN. § 159.201(a). He was convicted of both offenses and the jury assessed punishment at imprisonment for fifteen years and one day for each offense. The jury also assessed a fine of $10,000.00 for the offense of possession of a controlled substance. Appellant raises seven points of error. We affirm.

In the early morning hours of April 12, 1990, Officer Harvey Beasley of the Cham-

bers County Sheriff's Department was on routine patrol along Interstate 10. Officer Beasley was sitting in his parked patrol car on the eastbound side of I–10, when he observed a small compact car without a license plate. Officer Beasley stopped the car and the driver, later identified as Terry Wayne Ziglar (Terry), exited and walked toward the officer's vehicle. Officer Beasley observed two other occupants of the car; a man, later identified as Arthur Ziglar (Arthur), sitting in the front passenger seat, and a man, later identified as appellant, sitting in the backseat immediately behind the front passenger seat. According to Officer Beasley, Terry appeared extremely nervous. Terry stated that he was the owner of the car and that they were on the return leg of a trip from Mobile, Alabama to their father's house in Hempstead, Texas for the purpose of picking up his (Terry's) work clothes. Arthur confirmed Terry's story.

While interviewing Terry at the rear of the Ziglar car, Officer Beasley noticed that appellant "kept moving around and paying an extraordinary amount of attention to me." Officer Beasley then approached the passenger side of the car and shined his flashlight inside. At that time, he noticed a green clothing bag. It was later determined that the bag contained two or three pairs of blue jeans, a couple of shirts, and some underclothing. Officer Beasley motioned Arthur to roll down the window. When Arthur complied, Officer Beasley smelled the odor of raw marihuana. While talking to Arthur, Officer Beasley noticed that appellant was bent over so that he (Officer Beasley) could not see appellant's hands. For safety reasons, Officer Beasley admonished appellant to "sit up" and "be still." Officer Beasley also noticed that Arthur's hands were shaking, his speech was stammered, and he appeared extremely nervous.

Officer Beasley then walked over to Terry, who had remained standing at the rear of the car. He asked Terry if he had contraband in the car. When Terry answered in the negative, Officer Beasley asked and received permission to search the car. He requested Arthur and appellant to step from the car. Officer Beasley noticed that appellant's hands were shaking, he was shifting his feet, and he appeared extremely nervous. After conducting a pat-down search for weapons, Officer Beasley told Arthur and appellant to stand next to Terry. Officer Beasley first searched the console and the glove box. Next, he looked under the front passenger seat where he found a clear plastic bag containing an open, brown paper bag. According to Officer Beasley, the bag was located underneath the seat near the back one third of the seat on the left side. He pulled the bag from the front end of the seat and shined his flashlight which revealed a green leafy substance. The bag was later determined to contain 10.19 ounces of marihuana. Officer Beasley discontinued the search and announced to the three men that they were under arrest. At that point, the three men simultaneously "hung their heads" and "kind of slumped." Officer Beasley radioed for assistance and the men were then taken into custody.

■ In his first point of error, appellant contends that there is insufficient evidence that he knowingly possessed the marihuana. In reviewing the sufficiency of the evidence, the test is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Butler v. State*, 769 S.W.2d 234, 239 (Tex.Crim.App. 1989). This standard applies to both direct and circumstantial evidence cases. *Houston v. State*, 663 S.W.2d 455, 456 (Tex. Crim.App.1983).

■ Where an accused is charged with unlawful possession of a controlled substance, the State must prove two elements: (1) that the accused exercised care, control, and management over the contraband; and (2) that the accused knew the matter was contraband. *Martin v. State*, 753 S.W.2d 384, 387 (Tex.Crim.App.1988). Possession of contraband need not be exclusive, and evidence that shows the accused jointly

possessed the contraband with another is sufficient. *Id.; McGoldrick v. State,* 682 S.W.2d 573, 578 (Tex.Crim.App.1985); *Rodriguez v. State,* 635 S.W.2d 552, 553 (Tex. Crim.App. [Panel Op.] 1982). On the other hand, mere presence at a place where contraband is being used or possessed by others does not justify a finding of joint possession. *Martin,* 753 S.W.2d at 387; *McGoldrick,* 682 S.W.2d at 578.

█ To support a conviction for possessing a controlled substance, evidence must affirmatively link the accused to contraband in a manner, and to such an extent, that a reasonable inference may arise that the accused knew of the contraband's existence and whereabouts. *Gallegos v. State,* 776 S.W.2d 312, 314 (Tex.App.—Houston [1st Dist.] 1989, no pet.) (citing *Martin,* 753 S.W.2d at 387; *Rodriguez,* 635 S.W.2d at 553). The link can be circumstantial if the evidence excludes every other reasonable hypothesis except the guilt of the accused. *Castro v. State,* No. 835–90, 1992 WL 1131 (Tex.Crim.App., January 8, 1992) (not yet reported); *Humason v. State,* 728 S.W.2d 363, 365 (Tex.Crim.App.1987); *Winter v. State,* 725 S.W.2d 728, 731 (Tex.App.— Houston [1st Dist.] 1986, no pet.). Proof which amounts only to strong suspicion or mere probability is insufficient to support a conviction. *Humason,* 728 S.W.2d at 365. This does not mean that if evidence is presented at trial suggesting innocence, the jury cannot find the defendant guilty. *Castro,* slip op. at 3. Juries are charged with the responsibility of resolving factual questions and may reject evidence and testimony which suggests innocence. *Id.* "The rule that evidence must exclude every reasonable hypothesis of innocence refers to evidence which the jury believes and relies upon to support its verdict." *Id.* (quoting *State v. Poellinger,* 153 Wis.2d 493, 451 N.W.2d 752, 756 (1990)).

█ We find several affirmative links connecting appellant to the contraband. First, there was a strong odor of raw marihuana emanating from the car. *See Duff v. State,* 546 S.W.2d 283, 287 (Tex.Crim. App.1977); *See also Gallegos,* 776 S.W.2d at 314. Second, as Officer Beasley questioned the Ziglars, appellant made furtive gestures toward the contraband. *See Winter,* 725 S.W.2d at 731. Third, appellant became extremely nervous when Officer Beasley asked him to step from the car so that he could search the vehicle. Fourth, the 10.19 ounces of marihuana was found under the back one-third of the passenger seat, in close proximity to where appellant was sitting and readily accessible to him. *See Pollan v. State,* 612 S.W.2d 594, 596 (Tex.Crim.App. [Panel Op.1981); *See also Earvin v. State,* 632 S.W.2d 920, 924 (Tex. App.—Dallas 1982, pet. ref'd). Fifth, appellant hung his head when informed that he was under arrest for possession of contraband. *See Gallegos,* 776 S.W.2d at 313. That appellant was nervous in the presence of a police officer and hung his head when told he was under arrest do not by themselves imply guilt. When viewed with the other facts, however, the jury could infer that appellant had knowledge and control of the contraband. *See Glass v. State,* 681 S.W.2d 599, 602 (Tex.Crim.App.1984).

█ Appellant presents two alternative hypotheses with respect to his knowledge of the contraband. The first, that he was completely unaware of the contraband, had fallen asleep in the backseat and was attempting to tie or put on his shoes during Officer Beasley's stop. Appellant's second hypothesis is identical to the first except that under this scenario he learned of the contraband just moments after Officer Beasley's stop, thus, "limiting his options." The only evidence in support of those theories was that there was a pillow in the backseat of the car. In weighing the sufficiency of circumstantial evidence, an appellate court is not required to exclude every reasonable hypothesis concerning an accused's intent. *Matson v. State,* 819 S.W.2d 839, 845–46 (Tex.Crim.App.1991). Rather, "a reviewing court ... faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Mat-*

*son,* 819 S.W.2d at 846; *Farris v. State,* 819 S.W.2d 490, 495 (Tex.Crim.App.) (quoting *Jackson v. Virginia,* 443 U.S. at 326, 99 S.Ct. at 2793). Here, the jury rationally rejected the theories offered by appellant. Viewing the evidence in the light most favorable to the prosecution, we hold that the jury could find the essential elements of the crime beyond a reasonable doubt. We overrule appellant's first point of error.

 In his second point of error, appellant contends that the trial court erred in admitting the hearsay statements of the Ziglars. Both Terry and Arthur Ziglar told Officer Beasley that they were returning to Mobile, Alabama from Hempstead, Texas, where they had picked up work clothes for Terry. The State offered those statements under Tex.R.Crim.Evid. 801(e)(2)(E), which provides that declarations made by one conspirator "during the course and in the furtherance of the conspiracy" is admissible against another conspirator. *Williams v. State,* 790 S.W.2d 643, 644 (Tex.Crim.App.1990). The "in furtherance" requirement of rule 801(e)(2)(E) is a separate requirement that must be met in addition to the requirement the statement be made "during the conspiracy." *Meador v. State,* 812 S.W.2d 330, 333 (Tex. Crim.App.1991) (citing *Williams,* 790 S.W.2d at 645). The proponent of the statement has the burden of showing, by a preponderance of the evidence, that the statement does in fact meet the requirements of rule 801(e)(2)(E). *Id.*

 Appellant objected at trial, and now complains, that he was not a member of any conspiracy. He also maintains that the statements where not made "during the course and in the furtherance of the conspiracy" because the conspiracy, if any, ended when the men were stopped by Officer Beasley. A trial court has discretion to exclude or admit evidence before the jury and an appellate court cannot set aside the trial court's ruling absent a showing that the court abused its discretion. *See Mont-*

*gomery v. State,* 810 S.W.2d 372, 392 (Tex. Crim.App.1990) (opinion on reh'g). The agreement of the parties to act together in an unlawful act or design may be established by circumstantial evidence. *Armentrout v. State,* 645 S.W.2d 298, 301 (Tex.Crim.App.1983). A conspiracy may be terminated when the object of the conspiracy is completed or frustrated. *Deeb v. State,* 815 S.W.2d 692, 696 (Tex.Crim.App. 1991). Here, the alleged conspiracy was to transport and possess marihuana across state lines. According to Officer Beasley, both of the Ziglars stated that they were traveling with "my brother and a friend." Officer Beasley testified that the Zigars' responses to his questions about the nature of their trip gave him the impression that the Ziglars and appellant had been together through the entire trip. That the Ziglars and appellant may have in fact been traveling to Hempstead to get Terry's work clothes did not foreclose the possibility of a conspiracy to transport marijuana. The statements in question were made to the officer before the Ziglars and appellant had crossed state lines and before the contraband was discovered, thus, the conspiracy had not yet succeeded or failed. We cannot say that the trial court abused its discretion in concluding that the statements were made during the course of the conspiracy and in an effort facilitate or advance the cause of the conspiracy. *See Deeb v. State,* 815 S.W.2d 692, 696–97 (Tex. Crim.App.1991).[1] We overrule appellant's second point of error.

 In his third and fourth points of error, appellant contends that the trial court should have instructed the jury that mere presence at the scene or mere knowledge of the controlled substance does not establish possession of a controlled substance. The trial court properly refused appellant's requested charge over his timely, written objection because such an instruction would have constituted a comment on the weight of the evidence. *See*

---

**1.** *See Williams v. State,* 815 S.W.2d 743, 746 (Tex.App.—Waco 1991, pet. granted) (observing that Tex.R.Crim.Evid. 801(e)(2)(E) adopts the wording of the federal rule and noting examples of statements that meet and fail to meet the "in furtherance" requirement under the federal rule).

*Jones v. State*, 632 S.W.2d 646, 648 (Tex. App.—El Paso 1982, pet. ref'd); TEX.CODE CRIM.PROC.ANN. art. 38.05. We overrule appellant's third and fourth points of error.

 In his fifth point of error, appellant contends that there is insufficient evidence to support his conviction for failure to pay a controlled substances tax because there is insufficient evidence that the comptroller adopted "a uniform system for providing, affixing, and displaying official tax payment certificates to be attached to a taxable substance as evidence that the tax imposed by this chapter has been paid." TEX. TAX CODE ANN. § 159.003. In his sixth point of error, appellant contends the jury should have been instructed according to the terms of section 159.003.

Section 159.201 of the Tax Code provides that a dealer commits an offense if the dealer possesses a taxable substance on which the tax *imposed by this chapter* has not been paid. TEX. TAX CODE ANN. § 159.-201(a) (Vernon Pamphlet 1992) (*emphasis added*). Thus, the State was required to prove that: (1) appellant was a dealer, (2) in possession of a taxable substance, and (3) no tax had been paid. A "dealer" means "a person, who in violation of the law of this state imports into this state ... or possesses in this state more than four ounces of a taxable substance consisting of or containing marihuana." TEX. TAX CODE ANN. § 159.001(3)(B), (7).

As previously discussed, the State proved that appellant was a dealer in possession of a taxable substance consisting of 10.19 ounces of marihuana. The State also proved that a tax payment certificate was not affixed to the marihuana seized. Appellant argues, without citing authority, that the language "imposed by this chapter" requires the State to show that the comptroller in fact adopted a system "for providing, affixing, and displaying" a tax payment certificate. We disagree. Proof that the comptroller adopted such a system is not an element of the offense. We presume that when the legislature passes a statute, the person(s) designated to carry it out have done so. Here, the State needed to prove only that no tax was paid by

showing that no tax certificate was affixed to the taxable substance. TEX. TAX CODE ANN. § 159.102(b) (possession of a taxable substance without requisite certificates is *prima facie evidence* that tax not paid as required by this chapter) (*emphasis added*). There was sufficient evidence for the jury to find all the essential elements of the offense beyond a reasonable doubt. Since the State was not required to present additional proof that the comptroller adopted a system "for providing, affixing, and displaying" a tax payment certificate, it was also proper for the court to refuse appellant's requested instruction. We overrule appellant's fifth and sixth points of error.

In his seventh point of error, appellant contends the trial erred in overruling his motion for new trial. In that motion, appellant alleged that the jury improperly considered the parole laws.

 The decision on a motion for new trial rests within the sound discretion of the trial court. *Tollett v. State*, 799 S.W.2d 256, 259 (Tex.Crim.App.1990); *Beal v. State*, 520 S.W.2d 907, 912 (Tex.Crim. App.1975). In the absence of an abuse of discretion, the decision of the trial court will not be reversed on appeal. *Tollett*, 799 S.W.2d at 259; *Beal*, 520 S.W.2d at 912. The trial court must grant a new trial if it finds that jury misconduct prevented the accused from receiving a fair trial. TEX. R.APP.P. 30(b)(8). To show that a jury's discussion of the parole law constitutes reversible error, it must be shown that there was:

(1) a misstatement of the law

(2) asserted as a fact

(3) by one professing to know the law

(4) which is relied upon by other jurors

(5) who for that reason changed their vote to a harsher punishment

*Sneed v. State*, 670 S.W.2d 262, 266 (Tex. Crim.App.1984); *See Buentello v. State*, 826 S.W.2d 610, 614 (Tex.Crim.App.1992) (holding that test adopted in *Sneed* still a viable means of determining whether jury's discussion of parole law constitutes reversible error).

■ Appellant attached to his motion an affidavit of one of the jurors. That affidavit states in pertinent part:

... As a consequence of the prosecutor's recommendation of fifteen (15) years and one (1) day, and the trial judge's response to our note, we jurors decided that assessing a punishment of imprisonment for a term of years and one (1) day would affect the Defendant Daniel Eugene Bass' eligibility for parole. Although the trial court instructed us, the jury, not to consider the manner in which parole may be applied to this particular defendant, we did not follow such instruction. *It was our thinking* that assessing the additional one (1) day to the fifteen (15) years imprisonment would cause the parole law to be applied to the Defendant Daniel Eugene Bass in a manner more harshly than if we had simply assessed punishment for a term of years. In short, *we figured* the "one (1) day" would trigger something about the parole law *unknown to us* which might not otherwise be triggered. (*emphasis added*).

Appellant also filed a "motion for court to hear evidence by affidavit." Attached to that motion was another affidavit from the same juror. That affidavit states in pertinent part:

Those members of the jury who *thought* "15 years and a day" would require that he serve the full 15 years without possibility of parole were all staunchly in favor of 20 years in the penitentiary and the maximum fine. Because of their stated *belief* that if we gave 15 years and a day [the defendant] would actually spend more time in the penitentiary, than if we gave 20 years, they agreed to the lower sentence. In short, because of the *belief* that by giving [the defendant] 15 years and a day he would get less good time, and more pen time, [the defendant] almost certainly received a lighter sentence than would have otherwise have been the case. [The defendant] benefitted from the misunderstanding about parole law rather than being harmed by it. (*emphasis added*).

Obviously, the jury mistakenly assumed that they were imposing a harsher sentence by adding an extra day to appellant's fifteen-year prison term. The affidavits only reveal jurors' "thinking" or "beliefs" with respect to the application of the parole law. While it is questionable whether such affidavits are relevant under Tex.R.Crim. Evid. 606(b), they were considered by the trial court and we will consider them now. *See Buentello*, 826 S.W.2d at 614–615. Neither affidavit discloses what statements were made, who made them, whether they were asserted as fact, or whether the person making them professed knowledge about the application of the parole law. In addition, the record is devoid of any speculation by jurors about the time appellant would actually serve if given fifteen years and one day instead of twenty years. Appellant implies that there was a misstatement of the law by the prosecutor or the trial court. The prosecutor merely asked the jury in closing argument to assess punishment at imprisonment for "no less than fifteen years plus one day;" less than the maximum of twenty years. Furthermore, the trial court declined to answer the jury's inquiry regarding the effect of such a sentence. Under the circumstances, we find no abuse of discretion by the trial court in overruling appellant's motion for new trial. We overrule appellant's seventh point of error.